# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LARRY EDWARD FITZPATRICK, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF CALIFORNIA CITY, et al.,**<br><br>**Defendants.** | CASE NO. 1:96-CV-5411 AWI SMS<br><br>**ORDER DENYING DEFENDANTS' AMENDED MOTION FOR ENFORCEMENT OF RELIEF AGAINST NON-PARTIES**<br><br>(Doc. 119) |
| **CITY OF CALIFORNIA CITY REDEVELOPMENT AGENCY,**<br><br>**Intervener and Defendant** | |
| **ANA J. MATOSANTOS, in her official capacity as Director of the California Department of Finance; MARY B. BEDARD, in her official capacity as Auditor-Controller for Kern County; DOES 1-20,**<br><br>**Real Parties in Interest** | |

Defendants City of California City ("the City") and the Successor Agency of Defendant City of California City Redevelopment Agency ("Successor Agency")(collectively "Defendants") bring the instant motion to enforce a judgment entered by this Court in 1998. Defendants ask the Court to enforce the judgment against Ana J. Matosantos, in her official capacity as Director of the California Department of Finance, Mary B. Bedard, in her official capacity as Auditor-Controller for Kern County, and Does 1-20 (collectively, "Real Parties in Interest"). For the following reasons, Defendants' motion is denied:

I. BACKGROUND

A. <u>The Federal Judgment</u>

On February 24, 1998, Senior Judge Robert E. Coyle entered a stipulation and order for entry of judgment ("the Judgment"), closing the underlying matter. Doc. 78. The stipulation validated three of the City's previous actions, including investment in promissory notes issued by the City of California City Redevelopment Agency ("RDA"), the City's previous funding of construction improvements, and the City's previous expenditures from the Subdivision Deferred Improvements ("SDI") Fund. Doc. 78, p. 2, lines 14-18. The stipulation also required the City to adopt an SDI ordinance and gave provisions for attorney's fees and other procedures. Id. at p. 3, lines 21-22; p. 3, line 23 - p. 4, line 16. The Plaintiffs, beneficiaries of the SDI Fund, the City, and the RDA were parties to the stipulated judgment. See Doc. 78. The Court reserved continuing jurisdiction to enforce and uphold the settlement's terms and conditions and to assure compliance with the obligations created pursuant to the SDI Ordinance. Doc. 78, p. 4, lines 17-20. Since this case was closed in 1998 it was reassigned to Senior Judge Oliver O. Wanger in 2010 and then to Senior Judge Anthony W. Ishii in 2013. Docs. 96 and 106.

B. <u>The Dissolution of California Redevelopment Agencies</u>

In June of 2011 the California Legislature enacted Assembly Bill 1X 26, codified at Part 1.85 of Division 24 of the California Health and Safety Code, which suspended and dissolved redevelopment agencies such as the RDA and itemized the dissolution process. 2011 Cal. ALS 5A; 2011 Cal. AB 26X; Cal. Health & Saf. Code ("CHSC") §§ 34161, *et. seq*. Dissolution processes were clarified with Assembly Bill 1484 in 2012. Successor agencies were designated and given a list of required steps, including the authority to make payments on enforceable obligations. CHSC §§ 34173, *et. seq.*; 34177, *et. seq*. With regard to the payment of enforceable obligations, the legislative intent was that the redevelopment agencies would not further deplete their funds and enforceable obligations "shall be construed as broadly as possible to support this intent and to restrict the expenditure of funds to the fullest extent possible." CHSC §34167(a). Enforceable obligations include "Judgments or settlements entered by a competent court of law," *See* CHSC §34167(d)(1)(D), but explicitly exclude "any agreements, contracts, or arrangements

between the city, county, or city and county that created the redevelopment agency and the former redevelopment agency," *See* CHSC §34167(d)(4).

Further, the successor agencies are required to place the proposed enforceable obligations on a "Recognized Obligation Payment Schedule" that must be approved by an oversight board and the California Department of Finance ("DOF"). CHSC §§34179(a), (h); 34179.6. The DOF conducts a review and may overturn authorizations made by the oversight board. CHSC §34179.6(d). After a meet and confer process, the DOF makes a final decision, and the successor agency transmits the funds to the county auditor-controller. CHSC §34179(e) (f).

The CHSC states that the redevelopment agencies shall also be audited by the county auditor-controller "to establish each redevelopment agency's assets and liabilities, to document and determine each redevelopment agency's passthrough payment obligations to other taxing entities, and to document and determine both the amount and the terms of any indebtedness incurred by the redevelopment agency pursuant to the initial Recognized Obligation Payment Schedule." CHSC §34182(a)(1)-(2). The county auditor-controller determines what amounts are deemed property tax revenues for allocation and distribution. CHSC §34182(c)(1). The county auditor-controller puts those amounts into trust for the benefit of enforceable obligation holders and the taxing entities. CHSC §34182(c)(2). A county auditor-controller may review the Recognized Obligation Payment Schedules and object to the inclusion of any items the DOF has determined not to be enforceable obligations. CHSC §34182.5.

The CHSC further requires that any action contesting the validity of the bill or challenging acts taken pursuant to it shall be brought in the Superior Court of the County of Sacramento. CHSC §34168(a). In December 2011, the California Supreme Court held that the bill was a proper exercise of the legislative power vested in the legislature by the state constitution. *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 274 (2011). In making its ruling, the court noted the defendant's argument that "the Legislature could well recognize that because of the conjoined nature of the governing boards of redevelopment agencies and their community sponsors, such obligations [owed by redevelopment agencies to their community sponsors] often were not the product of arm's-length transactions." *Id*. at 258, n. 12.

C. The Instant Matter

In this case, the DOF determined that the promissory notes between the City and RDA, which were the subject of the 1998 judgment in this Court, were not enforceable obligations pursuant to the CHSC. Doc. 119, Exh. 5, p. 1. After a meet and confer process, the DOF affirmed its decision on May 17, 2013, stating, "Federal court stipulated judgments for City loans totaling $14.1 million continued to be denied at this time. […] CHSC section 34171(d)(2) states that agreements, contracts, or arrangements between the city that created the RDA and the former RDA are not enforceable. […] Finance agrees the judgment validates the promissory notes as contracts, but does not make them enforceable obligations in light of section 34171(d)(2)." Doc. 119, Exh. 5, p. 1.

Defendants filed a complaint for declaratory and injunctive relief against Real Parties in Interest in the Sacramento Superior Court on May 24, 2013. Doc. 123, Exh. 1. This case remains open.[1]

On May 29, 2013, Defendants filed a motion for a temporary restraining order in State Court as well as this Court to enjoin Real Parties in Interest from releasing funds to other entities. Doc. 107. Both motions were denied. Doc. 109.

Defendants filed the instant Motion to require the Real Parties in Interest to characterize the promissory notes from RDA to the City as enforceable obligations, and to distribute RDA's funds "such that the Judgment and the Successor's Agency's financial obligations are honored." Doc. 119, p. 10, lines 5-7, p. 13, lines 14-19. In the alternative, Defendants request that the Court revise the Judgment to require payment on the promissory notes. Doc. 119, p. 13, lines 20-21. Defendants rely on the Court's continuing jurisdiction to enforce its judgments and the All Writs Act, 28 U.S.C. § 1651(a), to enforce the judgment against third-parties. Doc. 119, p. 6, lines 14-27.

II.   DISCUSSION

A. Personal Jurisdiction

An injunctive order is an extraordinary writ granted to afford preventive, protective, or

---

[1] Case No. 34-2013-80001501. https://services.saccourt.ca.gov/publicdms/Search.aspx

4

1  restorative relief, but not to redress alleged wrongs that have already been committed. *Gunn v.*
2  *University Comm. to End the War in Vietnam*, 399 U.S. 383, 389, 90 S. Ct. 2013 (1970);
3  *Lacassagne v. Chapuis*, 144 U.S. 119, 124, 12 S. Ct. 659 (1892). Defendants motion seeks a writ
4  or injunction requiring Real Parties in Interest to take a specific action. The Court will address
5  Defendants motion to enforce the judgment by means of writ or injunction accordingly.

6        In general, this Court does not have personal jurisdiction over non-parties as they were not
7  parties to the underlying action or judgment. *See Price v. City of Stockton*, 390 F.3d 1105, 1117
8  (9th Cir. 2004)(per curiam)("A federal court may issue an injunction if it has personal jurisdiction
9  over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the
10  rights of persons not before the court."). With respect to non-parties, Rule 65(d) of the Federal
11  Rules of Civil Procedure provides that an order granting an injunction is only binding on (A) the
12  parties, (B) the parties' officers, agents, servants, employees, and attorneys, and (C) "other persons
13  who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" who
14  receive actual notice of the order. Fed. R. Civ. P. 65(d)(2).

15        Real Parties in Interest were given the responsibility through the 2011 Bill to distribute
16  RDA's funds. There is no legal authority finding they are parties or acting on behalf of any party
17  to the underlying federal action or the 1998 judgment. No party has alleged or provided evidence
18  that that they were in active concert or participation with the parties to the action, or any of the
19  parties' agents. Hence, the Court does not have personal jurisdiction over the Real Parties in
20  Interest to issue an injunction against them.

21        B.   <u>Enforceability of the Consent Judgment Against Non-Parties</u>

22        In the underlying federal action, the Court retained continuing jurisdiction to enforce the
23  judgment. Doc 78, p. 4, lines 17-20. The judgment recognizes the notes as valid between the City,
24  RDA, and the Plaintiffs: signatories to the judgment and those represented in the underlying
25  litigation. Id. It does not, and cannot, require recognition of the loans or performance on the loans
26  as to any other party.

27        The Second Circuit has found that a district court may not use the All Writs Act to enforce
28  a privately-negotiated consent decree against a nonparty. *Association for Retarded Citizens v.*

5

*Thorne*, 30 F.3d 367, 370 (2d Cir. 1994). Such enforcement would be beyond the district court's jurisdiction and beyond the scope of the All Writs Act because the terms of a consent decree were voluntarily assumed rather than legally imposed, and there is no basis for extending the negotiated outcome to a nonparty. *Id*.

The Supreme Court has held, for the purposes of enforcement, that consent decrees must be basically construed as contracts. *United States v. ITT Continental Baking Co*., 420 U.S. 223, 238, 95 S. Ct. 926 (1975). "A consent decree, like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree." *United States v. FMC Corp*., 531 F.3d 813, 819 (9th Cir. 2008). In addition, it is a basic tenet of California contract law that creation of a valid contract requires mutual assent. *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 59, 248 Cal. Rptr. 217, 229 (1988).

Applying these contract principles in this case, the Court must find that nonparties Real Parties in Interest cannot be held to the judgment's terms. A contract can be binding or enforceable on nonparties in the above-identified circumstances, such as when the nonparty agrees to be bound or was adequately represented in the litigation. Here, the Judgment was entered into by the Plaintiffs and Defendants based on a stipulation. Doc. 78, p. 1, line 24 – p. 2, line 5. The Judgment incorporated the Stipulation for Judgment filed by the parties and attached it to the Judgment. Id., p. 2, lines 7-9. The stipulated judgment was signed by attorneys for the City, RDA, the Plaintiffs, and Judge Coyle. Id., Exh. A, p. 9. The stipulated judgment was privately negotiated by the parties and is binding on those parties and their agents only. The stipulation that the Plaintiffs agreed that the loans between the City and RDA were valid has no bearing on whether the same loans will be considered "enforceable obligations" pursuant to the CHSC.

With regard to claim and issue preclusion, a non-party may be bound by a previous judgment under certain circumstances including whether the non-party agrees to be bound, whether there is a pre-existing substantive legal relationship between the non-party and a party to the judgment, whether the non-party was adequately represented by someone with the same interests who was a party to the previous suit, and whether the non-party assumed control over the litigation. *Taylor v. Sturgell*, 553 U.S. 880, 893-95, 128 S. Ct. 2161 (2008). Intended third party

beneficiaries may enforce an agreement in the same way as a party. *Hook v. Arizona, Dep't of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992), Fed. R. Civ. P. 71. Incidental third party beneficiaries are prohibited from suing to enforce a consent decree. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917 (1975).

As discussed, Real Parties in Interest can become responsible for approving the RDA's enforceable obligations and distributing funds according to statutory procedures set forth in the CHSC. However, the Real Parties in Interest did not have any relevant relationship with the parties to the underlying action. Their interests were not represented in the underlying action. They were not involved in negotiations to create the Judgment, they are not anticipated by the Judgment, and they are not intended or incidental beneficiaries of the Judgment. Consequently, it would be unfair for the Court to require them to take specific action according to the Judgment, which the parties in the underlying action negotiated privately and entered into voluntarily.

Further, a review of the Judgment demonstrates that it does not specifically provide for enforcement. The loans were validated as between the relevant parties, but the terms of the loan were not incorporated. Their validity was not adjudged by the Court on the merits and according to the application of relevant law. The loans' validation was accepted by the Court as a private agreement between the parties, whose dispute was based on whether the loans were unfair or against the best interests of the Plaintiffs. Plaintiffs voluntarily agreed to accept the loans as valid and drop related cases in the State Court in exchange for other actions by Defendants in the Plaintiffs' favor. It does not follow that the loans were validated in and of themselves, nor that the loans must be repaid within any identified time or manner. The Court did not reach the merits of the case in entering the Judgment. Considering the fogginess of "the conjoined nature of the governing boards of redevelopment agencies and their community sponsors," it is notable that Defendants have presented no evidence that RDA has ever made payments to the City on the loan any time after they were adjudged as valid by the Judgment entered in 1998; yet, Defendants argue that an extraordinary remedy should be made available by requiring distribution for repayment. Payment by a nonparty now in constructive control of the funds cannot be ordered.

Real Parties in Interest were not parties to the underlying action or the stipulated judgment,

7

nor were they represented or benefitted by the same, and they therefore cannot be held to the Judgment by contract principles.

### C. All Writs Analysis

The Court finds that the All Writs Act is not available in this case for the reasons stated above. However, the Court will briefly discuss the applicability of the All Writs Act addressed in Defendants' moving papers. In this case, Defendants seek a writ ordering Real Parties in Interest to disperse funds. Issuance of this writ would require this Court to order State action. Real Parties in Interest are California State departments and a writ from this Court would preempt the State Court from issuing a decision as to the validity of the State statute stating this loan type is not an enforceable obligation. Defendants therefore are seeking a writ binding the State court from issuing a decision and requiring that the State government officials, defendants in the State action, take specific actions.

The All Writs Act gives federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). It is meant to aid the court in the exercise and preservation of its jurisdiction. *Plum Creek Lumber Company v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons who, "though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Telephone Co.*, 434 U.S. 159, 174, 98 S. Ct. 364 (1977).

*1. The Eleventh Amendment*

The All Writs Act does not invest a federal district court with the power to compel performance of a state court, judicial officer, or another state official's duties under any circumstances. *Niz v. McEwen*, 2010 U.S. Dist. LEXIS 115801, *2-3 (S.D. Cal. Oct. 29, 2010)(*citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)(11th Amendment prohibits federal district court from ordering state officials to conform their conduct to state law).

Real Parties in Interest are California State officials named not as individuals, but in their official capacity: Ana J. Matosantos as Director of the California Department of Finance and Mary B. Bedard as Auditor-Controller for Kern County. The requested injunction compels Real Parties in Interest to perform their official duties in a certain manner. The Eleventh Amendment does not allow this Court to compel their performance.[2]

*2. The Anti-Injunction Act*

The Anti-Injunction Act operates as a limitation on the broad authority given to federal courts under the All Writs Act. *Brother Records, Inc. v. Jardine*, 432 F.3d 939, 942 (9th Cir. 2005). It states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 2283. Within its definition are three exceptions, the third of which, referred to as the relitigation exception, is at issue in this case. *See Montana v. BNSF Ry*., 623 F.3d 1312, 1315 (9th Cir. 2010).

The relitigation exception applies only when the issue decided by the federal court is the same as the issue to be decided by the state court, and only when the parties to the state proceeding were parties to the federal proceeding or fall within one of the few exceptions to the general rule against binding nonparties. *Smith v. Bayer Corp*., 131 S. Ct. 2368, 2376, 180 L. Ed. 2d 341 (2011). The party seeking to avail himself of the relitigation exception must make a "strong and unequivocal showing" that both these elements are satisfied. *Henrikson v. County of Sacramento*, 2014 U.S. Dist. LEXIS 17340 (E.D. Cal. Feb. 10, 2014)(quoting *LCS Services, Inc. v. Hamrick*, 925 F.2d 745, 749 (4th Cir. 1991)). This exception was designed to implement issue and claim preclusion. *Smith*, 131 S. Ct. at 2375. Whether prior litigation has preclusive effect is "usually the bailiwick of the second court," exceptions are to be construed narrowly, and any doubt as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed. *Id*. at 2375.

---

[2] To avoid the Eleventh Amendment's preclusion, Defendants claim this motion does not concern monetary relief, but merely wishes injunctive relief to enforce the Court's recognition of valid loans. However, this argument is contrary to the rest of Defendants' motion that requests this Court to order Real Parties in Interest to pay sums certain to Defendants for them to pay to Plaintiffs.

The Anti-Injunction Act is interpreted broadly and includes injunctions directed at the parties rather than the state court itself. *Atlantic L.R.C. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970). The Ninth Circuit does not restrict application of the Anti-Injunction Act solely to "an injunction to stay proceedings." *Shingle Springs Band of Miwok Indians v. Sharp Image Gaming, Inc*., 2010 U.S. Dist. LEXIS 109908 (E.D. Cal. Oct. 15, 2010)(referring to *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1152-1153 (9th Cir. 2007).

For example, in *Smith v. Bayer Corp*., the relitigation exception did not apply because the issues before the two courts were not the same, and the plaintiff in the state court case did not have the requisite connection to the federal case. *Smith*, 131 S. Ct. at 2376. The plaintiff in state court proposed certification of a class very similar to a proposed class in the federal court, and based on the same essential facts. *Id*. at 2377. However, the issue to be decided was not the same because the issue before the federal court was certification under Federal Rule of Civil Procedure Rule 23, and the issue before the state court was certification under the state certification rule, which was not found parallel to Rule 23. *Id*. at 2377-78. Uncertainty that the state and federal issues were the same alone precludes an injunction, but the Supreme Court further found that the state law diverged from the federal rule. *Id*. at 2378, 2379. The Court also emphasized the importance of the general and narrowly construed rule that only parties are bound to prior judgments, and found that an unnamed class member of a denied class is not a party to the suit. *Id*. at 2380.

The Supreme Court did not consider the case in *Smith v. Bayer Corp*. to be a close case. *Id*. at 2382. The case at issue here is even less close. The First Amended Complaint filed in Sacramento State Court seeks, in short, declaratory relief that Real Parties in Interest's actions are in violation of the CHSC, and seeks an injunction that Real Parties in Interest would not distribute the funds as they had indicated, but instead release funds to the Plaintiffs, along with a writ of mandate. Doc. 123, Exh. 2, p. 27-28. The requested relief requires that the state court make a determination that the loans are enforceable under the CHSC. This federal action originally sought declaratory judgment that the City's loans to the RDA were not authorized under California law. Doc. 107, Exh. 3, p. 4, lines 21-29. In the consent judgment, the loans were validated in the

10

interest of the parties to the action. Doc. 107, Exh. 3, p. 2, lines 10-18.

It is clear, therefore, that injunction is improper because the issue already decided by the federal court is not the same as the issue to be decided by the state court, and the relitigation exception to the Anti-Injunction Act is inapplicable. The CHSC provision at issue in the state court action did not even exist at the time of the consent judgment entry in federal court. The federal consent judgment did not reach the issue of whether the loans were valid under then-existing California law. Also, the parties against whom the injunction is sought in State Court were not parties to the federal action. As discussed in sections II.A and  II.B of this Order, Real Parties in Interest are not exceptions to the general rule against binding nonparties. Hence, the Anti-Injunction Act prevents the Court from issuing an injunction under the All Writs Act against the parties in the State Court action.

3. *"[A]ll Writs Necessary or Appropriate"*

A writ must be necessary or appropriate in aid of this Court's jurisdiction and agreeable to the usages and principles of law. 28 U.S.C. 1651(a).

*a. Necessity*

The All Writs Act invests a federal court with power essentially equitable and, as such, is not generally available to provide alternatives to other adequate remedies at law. *Clinton v. Goldsmith* 526 U.S. 529, 537, 119 S. Ct. 1538 (1999). In other words, "a writ may not be used […] when another method of review will suffice." 19-201 Moore's Federal Practice - Civil § 201.40. For example, in *Clinton v. Goldsmith*, the Supreme Court found that a writ could not be issued because other administrative bodies had authority to provide administrative or judicial review of the action challenged by respondent. *Clinton*, 526 U.S. at 537.  In *Clinton*, the Court identified various procedures available to a service member who had been disciplined for a general court-martial conviction of a violation of the Uniform Code of Military Justice, including review within the military system and a habeas corpus petition after military review was exhausted. *Id*. at note 11. In light of these alternative remedies, resort to the All Writs Act would have been "out of bounds, being unjustifiable either as 'necessary' or as 'appropriate.'" *Id*.

Here, Defendants proper remedy, if any, exists in California State court. The CHSC states

that any action contesting the validity of the bill or challenging acts taken pursuant to it shall be brought in the Superior Court of the County of Sacramento. CHSC §34168(a). The dispute between Defendants and Real Parties in Interest arose when the Real Parties in Interest refused to recognize the loans between the City and RDA as enforceable obligations under the CHSC's definition, which excludes agreements between the city that created the redevelopment agency and the former redevelopment agency. CHSC §34167(d)(4). This exclusion appears to encompass the loans at issue. Defendants' desired remedy is for this Court to order Real Parties in Interest to identify the loans as enforceable obligations and require RDA funds to be used for their repayment.

The necessary action to obtain this relief is anticipated by the bill, one that challenges "acts taken pursuant to it;" namely, Real Parties in Interest's denial of categorizing the loans as enforceable obligations. An action to determine that the Real Parties in Interest improperly categorized the loans as excluded from enforceable obligations as defined by the CHSC is a matter contesting acts taken pursuant to the Bill. An action to determine that this loan type should not be excluded as an enforceable obligation is a matter contesting the validity of the Bill itself. The proper remedy, therefore, is to bring an action in Sacramento County Superior Court. Defendants have properly done so. There is an adequate and proper alternative method of review in the State court; hence, resort to the All Writs Act to compel action by Real Parties in Interest would neither necessary nor appropriate.

      *b. Appropriateness*

The Court finds it would not be appropriate under the present circumstances to issue the writ. The California Legislature dissolved the redevelopment agencies created by the same Legislature and then passed legislation to complete their pending responsibilities. The agencies ceased to exist and their funds were distributed according to specific procedures. The Legislature found and codified that certain loans are not enforceable obligations to be repaid. Real Parties in Interest have determined, according to their role under this statute, that the loans in question are not enforceable obligations. Whether this determination is appropriate is a matter with a proper remedy available in State Court. Defendants' instant motion appears to be a creative effort to

circumvent the proper procedure for challenging the statute by attempting to enforce a consent judgment entered in 1998, validating a loan on which there is no evidence of payments. Writs are reserved for extraordinary cases. While the questions present in the current motion are unique, they are not so extraordinary as to issue a writ.

### D. Modification of the Judgment

In the alternative, Defendants request a modification of the Judgment indicating that "the Judgment was and is intended to require that the promissory notes be repaid by the RDA and its lawful successors to the City." Doc. 119, p. 12, lines 25-27. Defendants suggest the insertion of "language unambiguously ordering repayment of the notes from the Successor Agency to the City as trustee for the Plaintiffs to be deposited into the SDI fund, by clarifying in an order that the Judgment was and is intended to require that, and/or by directing the Department of Finance that the Judgment be so interpreted." Doc. 119, p. 13, lines 6-10.

For the purposes of enforcement, consent decrees must be construed as contracts. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S. Ct. 926 (1975). "A consent decree, like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree." *United States v. FMC Corp.*, 531 F.3d 813, 819 (9th Cir. 2008). Rule 60(a) states that "[t]he court may correct […] a mistake arising from oversight or omission."

The Court does not find within the Judgment's four corners that a specific repayment amount requirement exists as proposed by Defendants.[3] There is no ambiguity that would allow extrinsic evidence to be considered. The plain language of the Judgment indicates that the parties agreed that the Plaintiffs would consider the loans between the City and RDA as valid and the Plaintiffs would dismiss remaining lawsuits in exchange for the City's adoption of ordinances related to the SDI fund management. The Judgment does not state that the loans are recognizable by law; indeed, the merits of the loans were not adjudged. The Court's retained jurisdiction to enforce the Judgment would be properly exercised if, for example, Defendants failed to adopt the SDI ordinances or if the Plaintiffs failed to recognize the loans' validity. The Judgment does not

---

[3] If such a reading were made, the proposed modification would be nevertheless barred by the Eleventh Amendment, as discussed supra.

order Defendants to pay the Plaintiffs a specific amount. In addition, the Judgment does not extend to persons not party to the Judgment. The Court also does not find a mistake in the judgment arising from oversight or omission. Because the Court does not find that it was the Court's intent that the loans would be unequivocally repaid, the Court finds no basis on which to modify the Judgment.

III.   ORDER

Defendants' Amended Motion for Enforcement of Relief Against Non-parties is DENIED.

IT IS SO ORDERED.

Dated:   May 15, 2014                              _____
                                                        SENIOR DISTRICT JUDGE